Good morning, Your Honors. I would like to reserve some time for rebuttal. This is a case that arises out of a shooting by a police officer of the subject who is trying to flee. The subject was known to the police officer to have a Nobel warrant for a drug charge. There was an allegation of a business burglary that had occurred that there had not been a warrant issued for, but the officer was aware of. She rolls up on the scene. Subject flees. She is interviewing. They're containing. They're trying to catch the subject. Something occurs that allows the subject to get to a car that's parked there. He gets in, locks the doors, and digs down, gets the keys. She sees he has the keys in his hands. He starts the vehicle, which is a stick shift. He hasn't engaged the clutch, so it spins the tires when he turns it over. She steps back. There's nobody directly in his path. He moves his car to the left to go across his neighbor's yard to get out to the street, and she shoots him. Well, are you leaving out of that story that she took the gun, she smashed the window, she tried to grab the key, she told him to stop, she demanded he stop, and he refused to stop. I agree. Isn't that correct? Absolutely. She whacked him in the head a couple of times. Whacked him in the head, put the gun to his head, said she put it to his temple. My client believes that the shot went off when she smashed the window when the glass actually came in. He had indicated he put his arm up because the glass was coming in. This is an odd case. I don't know which side was supposed to take the summary judgment. It was supposed to take the side that's most adverse to the moving party. But I'm not sure your client's version is better than the moving party's version. I'm not sure which which version was supposed to accept. Well, Your Honor, you accept that version, which is most favorable to my client. Whichever version it may be. Which is better for your client? That she smashed the window, hit him over the head and then shot him? Or did she step back and shot him? Well, actually, I think the step back and shot him is more favorable to my client. And that is what she's testifying to. And is that his testimony or her testimony? His testimony was his belief was the gun went off when she smashed through the window. But he doesn't know. So the most favorable one to your client is her testimony? I believe so. I thought that he that she testified that she shot as the car was driving away. And what he testified that the gun went off by accident before he drove away. And literally when he turned the ignition, she stepped back because the car was in gear and he hadn't engaged the clutch. The wheel started to spin as soon as the ignition went over. This is a Jeep. It was in a gravel driveway. So it was easy for the tires to spin. And then as at that point, he got shot. Now, whether all this was occurring at one time, the difference between her version, stepping back and shooting as he starts to move or going off as she smashed the window, we're talking a matter of one or two seconds because this was all happening very fast. But the issue that I see before the court is summary judgment is not appropriate where this officer only basis for having fired her gun based on her testimony was her fear that other officers might be coming into the area and might get run over. What about a fleeing felon in a car speeding to get away? Isn't that dangerous to the public? I mean, don't we hear all the time about people being killed or maimed because somebody trying to get away in the car runs into them or smashes them while they're being chased? I guess we got to look at a policy issue. The policy issue is do we want officers shooting people, shooting in the direction of other civilians when it's a nonviolent crime? There's no allegation that he has used force or threatened to use force. The officer had no indication that he was trying to use force of any kind. He was merely trying to evade arrest. Question I think is, is it consistent with the Supreme Court rules that if a felon tries to flee by automobile, that makes him a dangerous person because he's in the automobile and therefore you can kill him. He's not walking away. In other words, he's trying to drive away. I understand. Under frantic conditions where he refuses to stop with a gun at his head, is he a danger to your friends and neighbors who are driving down the street? And now comes this car barreling towards them trying to get away. And does that justify deadly force? I don't think so. Not when it's a nonviolent crime. How many times do police officers stop pursuits because it could endanger the public? And they don't shoot at them, they stop the pursuit. Because unless the person has done a violent crime, they in pursuing may cause that fatal accident. And most departments in the United States, I mean, if you watch cops, you see it on a regular basis. They will call off a pursuit if it's endangering others, unless they know there's a violent crime involved. There was no violent crime involved here. And she used the ultimate force. There was no use of increasing force here. She didn't pepper spray the guy. She didn't put a handhold on his head. I don't think that's the question. Really, the first simple question basically is whether with a fleeing felon, assume a nonviolent fleeing from if he flees by car and he's going to go off at a high speed. Is that sufficient reason to shoot? Which means when you shoot, you have to assume you're going to kill a person. And I got a sufficient justification for the use of force. Or do they have to let him just go, even though they know he's a felon and he's going to flee? I would suggest that in a nonviolent crime, that has to be the rule, because taking of life is the ultimate penalty. I mean, clearly, this man has not done any violent crime that he's being wanted for. Well, no, the violence. I mean, the test is that you can shoot a fleeing felon if he is a danger. Or an immediate danger to others. And that can come either because, you know, the person is violent. He shot people. He's an escape murder. Or the question is, is it enough to comply with the two part test that the fact of fleeing itself makes him in a car, makes him a danger to the community? And I would suggest that that should not be a basis for allowing a police officer to shoot and kill a person. OK, but you say should not. But we have the U.S. Supreme Court, I think, has set a standard. And I think that can be argued whether it comes within the standard. But I think we have to follow that standard. And as I understand it, the standard is that deadly force can be used if a car chase would pose a significant threat of death or serious physical injury to the public. So significant risk of death or serious physical injury to the public. And if it's necessary to stop the person. Well, on the second element, she tried everything else. She put a gun to his head. She smashed the window. She certainly tried less drastic things to get him to stop. He was determined he wouldn't stop, said you're going to have to kill me or whatever. But basically, he wouldn't stop. So my problem is for the same reason you're saying, although I don't watch cops, I've heard from my law clerks that it often shows cars careening out of control when people are going fast and people getting injured. And, you know, those are innocent people, totally innocent people getting injured. Often, I would like to respond by saying at the point in time that she shot this man, the only thing he was doing is driving out of his driveway. Well, there were cars blocking him in the driveway. Actually, he's fishtailing out to the side trying to get away. Now, actually, I think looking at the light most favorable with my client, he spun his wheels when he did the ignition and spun some gravel. But that he did not fishtail, that he merely steered and when there are a car on the driveway in front of him, it was. But there was sufficient room in front. And I believe my client's testimony was that driveways approximately 20 feet wide. And that all he did was turn the wheel and go to the to the side of it. He had sufficient room to go by it. And then drives through the road entrance. Well, he drove through the neighbor's yard because there was a truck parked out on the street that was, in fact, blocking the end of the. Would you say that if somebody is driving away with after they've refused to stop at a direct request of a police officer and refuse to stop with a gun at their head, refuse to stop when someone bashed in the window with the gun, that there's a risk that they're going to drive fast trying to get away? At this point, if there are no officers in pursuit, there is nothing to say that he won't drive around the corner and drive slow or hide his car. He was merely trying to evade the immediate arrest. And so what you're doing is you're saying next time if he's doing it, he ought to get out of the car and walk away. Then. Well, I hate to think that if you drive away, then you can be shot. I guess the question is what that Supreme Court standard requires us to do here. I think you're clear on the issue. Can you kill everybody who tries to escape the police by car? And I think because if the police are going to chase them, as Judge Gould said, they're going to drive at a high speed. There are various things. You don't have to look at cops. All you have to do is know what goes on in the police departments and the debates over the policies of high speed chases. One solution is to kill everybody who decides that he's going to try to escape. The other is not to always have a high speed chase and to get them under some other circumstances, especially those are violent. Those are debates that are not new to law enforcement and public policy. Thank you. It pleased the court. My name is Marianne McConaughey. I'm representing the defendant appellees, the city of Puyallup and police officer Rochelle Brousseau, who unfortunately could not be here today. She had a pre-existing engagement. The court spent a fair amount of time talking about or asking questions about the circumstances of the shooting. And I think it's extremely important for the court to understand the physical circumstances that confronted Officer Brousseau and the risk that was entailed in Mr. General. And do you take the general view that you can kill anybody who any felon who tries to escape by car? No, no. And I think you have to remember, the court must look at the totality of the circumstances that faced Officer Brousseau, not the kind of broad, you know, circumstances of other cases. You've talked about the fact that there were parked cars blocking the path of his escape. But no one has mentioned the fact that there was a three-year-old child in the car closest to Mr. Haugen by Mr. Haugen's assessment, only about four feet away from the front of his car. He knew that child was there. And so did Officer Brousseau. And that's why he didn't drive in that direction. He drove off in the other direction. There are also photographs in the supplemental excerpt of record that show the, and this is Mr. Haugen's assessment, the small, tight space that his car was in. And that show the positioning of the cars, the extreme narrowness of the street that he was escaping into. And also, very importantly, that show that his car was positioned very close to a house. Officer Brousseau was expecting her backup officers to come around the front of that house. That's where she thought they were going to be coming. They would have been walking directly into the path of that car. Now, she didn't know where her backup was. How is it going to help if he's driving a car, she might think the officer might be coming around the corner. She hasn't seen him yet. No. So she's faced with a guy who's fully in control of the automobile, driving fast, but not yet wounded. She shoots the guy. So he loses control of the car. I don't know that that's necessarily going to make the officers coming around the corner any safer after she shot him. OK, this exactly is the dilemma that police officers face every day. Remember, she knew that if she shot, she could seriously injure or kill Mr. Haugen. She also knew that she couldn't predict what he was going to do. And if she didn't shoot him, his actions, his driving could seriously injure one of her fellow officers or the people in those cars. That could happen. Let me ask you this. The situation at the earlier stages, he's in the car, he's locked the door, he's clearly trying to start the car to get away. She pulls her gun. We're trying to figure out what are her reasonable alternatives short of violent or deadly force to stop him. At that point, it should have been obvious to her, I think probably was obvious to her, that he might try to drive away. Right. I think that was one of her concerns. She has a gun in her hand and she does what seems to be somewhat improbable. She breaks the window and starts beating him in the head. She could have shot the tires right there, step back, shoot the tires. He's going nowhere and there's no deadly force. Did that occur to her? No, I've often heard police officers, it's not in the record, talk about civilians that kind of don't understand some of these issues. Asking them why they don't shoot tires. They're trained not to shoot tires out because of the risks of ricocheting, the risks of unintended injuries. The car is stationary. No, I understand. She's worried she's going to miss the tire. All she needs to do is take the gun, put it right next to the tire and go, bam. We're not worried about the possibility of she's going to miss and hit the tire rim. She doesn't have to do that. It's not as though she's shooting at a tire of a fleeing vehicle. I was certainly not, I wasn't prepared for that question. So I can't tell you what, what, you know, technically. OK, well, let me just tell you that police officers are specifically trained. Don't shoot out tires. That may mean the City of Puyallup will shoot people, not tires. Well, Your Honor, let me say it this way. If that's the training, the City of Puyallup may be on the hook here, too. Well, I think what we have to consider is that this court, the circumstances that faced this officer are undisputed. This developed very, very quickly. She did not have hours to consider what her options are. She didn't have time to consult with anyone. It was her job to both protect the public and to apprehend the suspect. Her actions cannot be judged in 20, 20 hindsight. They must be. You know, that's always a speech, you know, and every time we have a case like this, it comes up that way. When police shoot somebody or beat somebody or use excessive force, it's not something that's planned for weeks. It's always something that happens on the time. And then you always say, well, 20, 20 hindsight. But you're trying to have a body of law that will avoid killing people unnecessarily. And the question is basically what you said. Here is a man who's going to drive off. Now, is it better or is it more consistent with the law to let somebody who's stolen some tools escape and have to get them later? Or is it better to kill and execute him for stealing the tools? That's another way to look at the issue. She had a choice. One is going to likely result in somebody's death or very serious injury. Now, you say, well, she thought that was better because maybe other cops would be coming around the corner. Well, you know, it sounds to me from your argument that this little girl that the cops put in the car and told to stay there is not really. It wouldn't have mattered whether that little girl was there or not. She thought cops might arrive and he might drive out of the driveway and drive into cops. So it's better to kill. Well, the question is, is that what Tennessee versus Gardner means or not? Now, you've got another issue that you could prevail on, even if you didn't prevail on that. And that's the qualified immunity. One, is it a violation? And two, should any reasonable officer have known that that was going to be a violation? And and let me that's that is the issue we have to decide. What is the application? Well, we've been on part one, not part two. Well, the application of the qualified immunity doctrine. Essentially, the qualified immunity doctrine, as the court has said many times, is normally a question of law that should be decided by the courts at the earliest stage of the litigation. And you have to focus on or you have to put yourself. Well, we have to be mindful of the circumstance that the police officer is in at the time she makes that decision, knowing that she has the obligation to to stop and arrest this person and the obligation to protect the public and her fellow officers in so doing. And whatever circumstance, whatever decision. Her obligation is limited. She doesn't have an obligation. If he tries to flee, her obligation is limited that she cannot use deadly force against him unless he's a menace or a danger to the community. That's right. And so that her obligation is limited by that rule. Right. And when we talk about qualified immunity, and this is what's so important to come back to, is qualified immunity recognizes that an officer may be mistaken at the time a decision is made. But it asks, it says, look, if you're going to put these people in the situation where they have the obligation to uphold the law and to protect the public, and in the heat of the moment, they're faced with this difficult situation. If I shoot, I might kill this person. If I don't shoot, he might kill someone. Is that reasonable, what she decided? And the argument you make is a perfectly sensible one. And we see it all the time in the case is pretty well established doctrine that split second decisions are to be evaluated differently from decisions that are made sort of behind the desk or whatever it is. And I think that's absolutely right. That's the best the rule. I think it's a sensible rule. But there are various stages of her actions. And if she were immediately, if the only thing she were confronted with, she walks out onto the driveway and as she walks out of the driveway, he is driving away, spinning his tires. And in her view, potentially endangering people. That's a different case from the case where he's in the car with the door locked, fumbling with the keys, trying to get it started. Well, at that point, she has a wider range of alternatives. So I'm not it's the split second analysis does not apply only to what she should have done as he drives away. So, for example, when she comes up and sees, you know, he may drive away. Is there some way I can disable this vehicle short of shooting him? Isn't that right? So that wasn't what we need to go back to that point where he's in the car looking, he's going to drive away. As I understand it, you do have to look at the totality of the circumstances. And, of course, the focus, though, is what is happening at the time the decision to shoot is made. Well, the focus is designed to look at what are her alternatives to prevent him from driving away. And she had alternatives throughout this. As he's finally driving, her alternatives are kind of narrow. Well, and that reminds me of something the court has stated. It's there are when you're faced with the kind of circumstance she was faced with. Presumably different officers could respond to it in different ways. But the fact that another officer may not have shot at that point or may have done something else is not the focus. The question is, under all the circumstances, as she perceived them. Did she make a reasonable choice and objectively reasonable choice? And then it has to come back to also, did she know at that time or given all the facts that she knew, given her actions at that time, would any, any reasonable officer have known that what she was doing was violating his civil rights? And the answer to that question has to be no. By the way, is it definitely safe to shoot the tires out when someone's got a car started and they're desperate to go? I mean, don't don't people drive with tires flat for significant distances? Well, they can. And again, I, I just again, it had not focused on on shooting tires out. But police officers don't do that. We see it in the movies. But that doesn't happen. They're trained not to do that. And I wish I was more up to speed on that. We're from a different generation where they. Well, we are where, you know, shoot the warning shots. They don't shoot warning shots anymore, either. So I just go right to the jugular every time, excuse me, go straight for the jugular every time. Your Honor, I don't think that that is fair to this officer. And what she was not just asking, you're telling I want to talk about an officer. You're telling us about a general policy. That is not what they no longer shoot tires. They no longer give warning shots. They just go straight for the head. Well, I disagree with that, with that. Well, what do they do? Her effort was to, first of all, by simply shouting commands to get him to comply. He wasn't going to do that. Then she decided to use blow blowing force to break out the window and hit him in an attempt to convince him that she was serious and to try to stall him for a while so that backup could come. She was trying a series of actions, less drastic means trying to get him to stop without shooting him. That's clear from the record. It is true. The question is whether or not it was reasonable to have that sequence compared to a different sequence. Right. And then we know it's that important to stop that. It's sufficiently important to take human life that you stop somebody who's trying to flee an arrest. I've got a different question, which is there's some dispute here in terms of what happened. She tells one boss or tells one story. He tells a different story. Yes. There is a suggestion, at least, that one of the things that she was concerned about as he was beginning to drive away was the safety of these officers. Do we need a factual hearing in the district court to determine the facts of this? Does it matter that under any circumstance she wins under any in any possible scenario? Well, let me talk talk about that. The first of all, what we're talking about is Mr. Halvan's perception. He believed that she fired accidentally. And the question is, remember that the the standard is one of objective reasonableness. So it's not really important what was in her mind, but what all the surrounding circumstances were. I got it. OK. OK. We're way over on your time. But thank you very much. OK. Yes. Do you have a minute or two at most? I will just take a one shot at the end here. I think it's fundamental policy and it should be the policy that life is important and that when it's a nonviolent felony, shooting the officer, shooting by the officer to kill someone is not justified. And I think that's the ultimate statement on the case. Thank you. Thank you, counsel. Thank you both very much. The case just argued will be submitted. The court will take a brief recess before the next case. Thank you.
judges: Reinhardt, W Fletcher, Gould